T. P. OWEN v. STATE OF NEBRASKA.

[FILED APRIL 7, 1892.]

**Forgery:** INSUFFICIENT EVIDENCE. In a prosecution for uttering a forged promissory note, knowing it to have been forged, *held*, that the proof was insufficient to sustain the verdict.

ERROR to the district court for Hamilton county. Tried below before NORVAL, J.

*Sedgwick & Power*, for plaintiff in error, cited: Maxwell, Crim. Proc., 154, note 1 ; *Lindsey v. State*, 38 O. St., 514; *Dell v. Oppenheimer*, 9 Neb., 457 ; *Thompson v. State*, 4 Id., 525.

*George H. Hastings, Attorney General*, contra, cited:

Maxwell, Crim. Proc., 154, note 1; *People v. Everhardt*, 104 N. Y., 591; *Garner v. State*, 5 Lea [Tenn.], 213; *State v. Saunders*, 68 Ia., 370; *Pierce v. State*, 58 Ga., 365; *State v. Kellerman*, 14 Kan., 135; *Mead v. McGraw*, · 19 O. St., 55; *Hoge v. People*, 117 Ill., 35; *Jones v. People*, 2 Colo., 359; *Dell v. Oppenheimer*, 9 Neb., 457.

MAXWELL, CH. J.

The plaintiff in error was convicted of uttering a forged promissory note, knowing it to have been forged, and was sentenced to imprisonment in the penitentiary for two years. There are two counts in the information, the charges being as follows:

"THE STATE OF NEBRASKA
                   *v.*                    } Information.
THOMAS P. OWEN, LEWIS
       . ROBERTS.

"STATE OF NEBRASKA,     } ss.
 COUNTY OF HAMILTON.

"At the April term of the district court within and for Hamilton county, Nebraska, in the year of our Lord 1889.

" Jerome H. Smith, prosecuting attorney in and for said county of Hamilton, in the name and by the authority and on the behalf of the state of Nebraska, information makes that Thomas P. Owen and Lewis Roberts did, on the 18th day of May, in the year of our Lord 1889, in Hamilton county, Nebraska, unlawfully, feloniously, and with the intent to defraud, make, forge, and counterfeit a certain promissory note for the payment of money, which note is in the words and figures following, that is to say :

"'$120.               HAMPTON, NEB., May 15, 1889.

"'Twelve months after date, I promise to pay to the order of T. P. Owen one hundred and twenty dollars, value received, with ten per cent interest per annum.

                              "' WM. E. CUTTS.

"' Payable at Bromfield P. O.'

contrary to the statute in such case made and provided.

"Second count—And the said Jerome H. Smith, prose-
cuting attorney in and for said county of Hamilton, upon
his oath as aforesaid, and on behalf of the state of Ne-
braska, further information makes, that the said Thomas
P. Owen and Lewis Roberts, and being the same persons
named in the first count of this information, did, on the
18th day of May, in the year of our Lord 1889, in said
county of Hamilton, having in their custody and posses-
sion a false, forged, and counterfeit promissory note for the
payment of money, which note is in the words and figures
following, to-wit:

"'$120.               HAMPTON, NEB., May 15, 1889.

"'Twelve months after date, I promise to pay to the
order of T. P. Owen one hundred and twenty dollars,
value received, with interest at ten per cent per annum.

"'WM. E. CUTTS.

"'Payable at Bromfield P. O.'
and being the same note mentioned and described in the
first count of this information, did knowingly, unlawfully,
feloniously, and with intent to defraud, utter and publish
the same as true and genuine, well knowing at said time
that said note was false, forged, and counterfeit, and con-
trary to the statute in such case made and provided, and
against the peace and dignity of the state of Nebraska.

"JEROME H. SMITH,

"County Attorney."

The testimony shows that the plaintiff in error was en-
gaged in the business of selling patent rights, and that he
employed one Lewis Roberts as agent to canvass for him
and secure victims; that Roberts took a number of con-
tracts signed by the plaintiff and induced Cutts to enter
into a contract. It is as follows:

"Made and entered into this 15th day of May, 1889,
by and between T. P. Owen, of York, state of Nebraska,
parties of the first part, and Wm. E. Cutts, of ———,
county of Hamilton, state of Nebraska, party of the sec-

ond part, witnesseth: That the said parties of the first part, as the legal owners of the letters patent Nos. 298,032, dated May 6, 1884, upon improved machines to manufacture the 'combination slat and wire fence,' and desiring to establish a permanent industry in Hamilton county for the purpose of manufacturing and selling said fence, do hereby make and constitute the party of the second part a lawful agent with power to contract, build, or sell the manufactured fence in the township of Union, county of Hamilton, state of Nebraska. The manufactured fence to be kept in stock by the manufacturing agent, J. W. Fay & Son, at Hampton, county of Hamilton, state of Nebraska, and at all times to be furnished to the second party at wholesale prices, 35 to 40 cents per rod for two foot or hog fence; 55 cents per rod for 6-wire fence; 60 cents per rod for 8-wire fence, and 65 cents per rod for 10-wire fence. The fence to be composed of No. 12 annealed steel and galvanized wire, with 46 pickets per rod. The manufacturing agent has also bound himself by contract to use his endeavor to sell the fence, and on all sales made by him or at the factory to credit the township agent wherein the fence goes with all in excess of wholesale price, the same to be sold so that the net profits to the agent shall at all times be 15 cents per rod, or $48 per mile.

"The party for the second part, for and in consideration of the rights and privileges herein granted, does hereby agree to use his endeavors to sell the fence in the above named territory, keep a true account of the same, and remit by draft or postal order to the first parties 5 cents per rod of the commission after he has received all the commission, amounting to $300 on the first seven and one half miles that are sold, as he has this day paid $120 to the first parties by the execution of his obligation, the commission on two and one-half miles of fence, said two and one-half miles of fence to be sold in one year from the above date as said obligation is given in consideration of the township,

two-thirds interest in the business and privileges herein granted, and if said two and one-half miles of fence are not sold at the expiration of one year and said $120 not obtained by the extended date of one year from maturity of said obligation, said T. P. Owen, or their authorized representatives, and are additionally empowered to cancel said obligation of said agent and appoint another agent in his stead, returning to said agent the original obligation of $120, but not the amount of commission paid thereon.

"The second party has also the right to use on all his own land the fencing at factory prices, and the exclusive management of the business in his territory, and is to report the amount of business by letter to the first parties at his general office in York quarterly on or before January, April, July, October.

"In witness whereof, we have hereunto set our hands the day and year above written.          T. P. OWENS,

"WM. E. CUTTS.

"NOTE.—Two of the above contracts are to be filled out exactly alike and both of the contracting parties sign them, so each will hold a copy."

There are two of these contracts and the signature of Cutts to these is admitted to be genuine. He denies executing the note, however. There is testimony in the record tending to show that Roberts, by manipulation, had Cutts sign the note while he was signing the contracts. Whatever the facts may be as to that, the clear weight of testimony tends to show that Roberts delivered the note in question with a copy of the contract above set out to the defendant in error. On the trial of the cause, however, Roberts testified that he did not deliver the note in question to the plaintiff in error, but that the plaintiff in error signed Cutts' name to the same. It is evident that upon this testimony he was convicted, yet the jury found him not guilty of the forgery, but of uttering the forged instrument, knowing it to have been forged. This the proof fails to establish.

It is unnecessary to review the evidence at length. The plaintiff in error seems to have been engaged in a business which has been used by sharpers and scoundrels as a means of defrauding many persons with whom contracts were made. The jury seems to have formed an estimate of his intentions from his business and associations, and by these causes no doubt were induced to render a verdict of guilty. It is evident that Roberts, the principal witness for the state, is wholly unreliable, and that he admitted after the trial that he had committed perjury to save himself. It may not be too late to punish him for the crime. It is unnecessary to discuss the intention of the plaintiff in error to defraud, it being admitted that he delivered two genuine notes upon solvent parties each for the sum of $120, to be held as security for $50. This statement of the case shows no fraud could have been intended. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

POST, J, concurs.

NORVAL, J., took no part in the decision.